TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT D. DUBOIS (Cal. Bar No. 307110)
Assistant United States Attorney
International Narcotics, Money
 Laundering & Racketeering Section
        1400 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0882
        Facsimile: (213) 894-0142
        E-mail:   scott.dubois@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-370-VAP-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT SANG BUM NOH |
| v. | Hearing Date: December 6, 2021 |
| SANG BUM NOH, aka "Ed Noh," | Hearing Time: 9:00 p.m. |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Scott D. Dubois,

hereby files its sentencing position with respect to Defendant Sang

Bum Noh.

//

//

This Sentencing position is based upon the attached memorandum of points and authorities, the presentence investigation report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 19, 2021          Respectfully submitted,

                                  TRACY L. WILKISON
                                  United States Attorney

                                  SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  SCOTT D. DUBOIS
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In less than four years, defendant Sang Bum "Ed" Noh ("defendant") deployed an array of criminal conduct -- from customs fraud to money laundering -- to deprive U.S. Customs and Border Protection ("CBP") and the Internal Revenue Service ("IRS") of approximately $35 million.  Between January 2010 and September 2014, defendant and his business, Ambiance U.S.A., Inc. ("Ambiance"), conspired to (1) shortchange CBP of $17,169,492.72 in customs duties by falsely undervaluing its imports by more than $82 million, (2) accept more than $11 million in suspected drug proceeds by refusing to report 364 bulk cash transactions, and (3) underreport Ambiance's taxable income by $13,422,908 and defendant's own by $6,548,442.  While defendant was cheating the United States and facilitating money laundering, he enjoyed a house in Bel Air, bought luxury cars, and squirreled away bundles of cash worth $35 million in shoeboxes and garbage bags.

On October 9, 2020, pursuant to a pre-indictment plea agreement, defendant pleaded guilty to one count of conspiracy, in violation of 18 U.S.C. § 371, and one count of making and subscribing a false tax return, in violation of 26 U.S.C. § 7206(1).  (Dkt. 7.)  On the same day, Ambiance pleaded guilty to conspiring with defendant as well as seven other substantive counts, including international promotional money laundering, entry of goods falsely classified and by means of false statements, passing false and fraudulent papers through customhouse, failure to file report of a currency transaction, and making and subscribing a false tax return.  (Dkt. 6.)  Consistent with the parties' agreement, the United States Probation and Pretrial

Services Office ("USPO") has filed a presentence investigation report ("PSR") calculating a total offense level of 25.  (PSR ¶¶ 63-76; Plea Agreement ¶ 29.)  The government further concurs with the PSR that defendant is within criminal history category I, resulting in a Guidelines range of 57 to 71 months' imprisonment.

Balancing the aggravating and mitigating factors in this case, the Court should impose a low-end sentence of 57 months' imprisonment followed by one year of supervised release as well as a mandatory special assessment of $200.  The seriousness of defendant's crimes and his evident lack of respect for the law demand a within-Guidelines sentence to deter others, promote respect for the law, and achieve just punishment.  See 18 U.S.C. § 3553(a).

## II. STATEMENT OF FACTS

The government agrees with and adopts the facts set forth in the PSR at paragraphs 13 through 50, as supplemented by the factual basis in Exhibit B to defendant's plea agreement.

Since 1999, defendant and his wife have owned and operated Ambiance, a garment wholesaling business.  (PSR ¶¶ 14-17.) Ambiance's core business was importing clothing from East Asian countries and selling it wholesale to both large apparel chains and smaller businesses, including a number of customers in Mexico. Ambiance also operated a walk-in retail storefront that catered to smaller customers.  (PSR ¶ 38.)  As a Subchapter S Corporation, Ambiance's income flowed through Ambiance to defendant and his wife without being taxed at the corporate level.  (PSR ¶ 41.)

In summary, from a date unknown, but no later than January 1, 2010, until September 10, 2014, defendant conspired with Ambiance to commit at least three criminal schemes.  The first was a customs

2

fraud whereby defendant and Ambiance would report only 60 to 70 percent of the price of the company's imported goods.  In fact, defendant kept an "Undervalue Calculator" that allowed Ambiance to quickly calculate 60 or 70 percent of a shipment's value as well as the amount of customs duty owed on this portion of the value.  (PSR ¶ 24.)  Defendant and Ambiance asked sellers to send two invoices, only the first of which would be sent to the customs agent and thus used to calculate duties.  Ambiance would pay the second invoice separately by wire transfer without reporting it to CBP.  (PSR ¶ 23.) In the roughly four years relevant to the Information, defendant and Ambiance fraudulently undervalued the company's imports by more than $82 million over approximately 438 shipments.  (PSR ¶ 29.)  In so doing, defendant cheated the United States out of $17,169,492.72 in customs duties and $1,251,950.69 in interest.  (PSR ¶ 26.)

The second criminal scheme was the knowing and intentional failure to report at least 364 cash transactions over $10,000 while ignoring that these bulk cash payments were likely drug proceeds. (PSR ¶¶ 19, 30-37.)  The scheme is known as a Black Market Peso Exchange, whereby drug traffickers avoid banks (and detection by law enforcement) by using local businesses to convert large amounts of U.S. currency from drug sales into pesos or another foreign currency for repatriation to members of the organization living abroad.  In this case, Mexican retailers who purchased clothing from Ambiance would pay a Mexican broker -- who was linked to a drug trafficking organization -- for the apparel in pesos, and at a discount given the illegal nature of the exchange.  Meanwhile, an associate of the broker would deliver bulk cash from drug sales to domestic businesses such as Ambiance, purportedly as payment from the Mexican apparel

3

customer.  Bulk cash is, of course, easier to hide from tax
authorities.

It is to track and prevent such money laundering that businesses
are required to complete a Form 8300, reporting whenever they receive
cash payments of $10,000 or more.  Despite being warned of this
requirement by Ambiance's accountants in July 2012 and in-person by
the Department of Homeland Security in May 2013, defendant and
Ambiance accepted 364 cash payments totaling $11,103,122 without
completing a Form 8300.  (PSR ¶¶ 35-36.)  Of these, six exchanges
worth $184,344 were directly linked to drug proceeds, as the
deliveries were made by an undercover agent working with a peso
broker who received instructions from drug traffickers.  (See PSR
¶ 37.)  Thus, defendant and Ambiance's willful disregard of these
reporting requirements helped finance drug trafficking.

For the third scheme, defendant and Ambiance committed tax
fraud.  (PSR ¶¶ 38-49.)  Defendant separated sales from Ambiance's
storefront into two books -- titled "Store 1" and "Store 2" --
depending on the customer and type of payment.  The book for "Store
1" recorded sales to small businesses paid in cash, credit card, or
wire transfer, while nearly all of the "Store 2" invoices were paid
in cash.  (PSR ¶ 38.)  Defendant ensured that none of the "Store 2"
receipts were reported to Ambiance's accountants or to the IRS.  (PSR
¶ 43.)  As an S Corporation, the reduced taxable income for Ambiance
flowed through the company to the owners -- defendant and his wife,
directly reducing their taxable income.  (PSR ¶ 41.)  Ambiance
omitted approximately $13,422,908 in cash sales from its 2011 tax
return and $6,548,442 from its 2012 return.  In both instances,
defendant then filed his own taxes knowingly relying on Ambiance's

false returns.  (PSR ¶¶ 46-49.)  As a result, the IRS suffered a tax loss, including interest, of $16,806,412.  (PSR ¶ 53.)

While defendant and Ambiance were conspiring to defraud the United States, defendant and his wife purchased an $8 million mansion in Bel Air and luxury cars.  (PSR ¶¶ 99-100, 120.)  On September 10, 2014, investigators executed search warrants at multiple locations and discovered, among other things, that defendant had stashed $35 million dollars in cash, most of which was stored in plastic garbage bags, shoeboxes, and the trunk of a 2012 Bentley.  (PSR ¶ 50.)

**III. GUIDELINES CALCULATION**

Pursuant to the plea agreement and in concurrence with the USPO, the government submits defendant's offense level should be calculated as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2S1.3(a)(2) |
| Funds > $9.5 million: | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |
| Pattern of Activity > $100,000: | +2 | U.S.S.G. § 2S1.1(b)(2) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 25 | |

Based on the conduct described in paragraphs 78 through 84 of the PSR, defendant has one criminal history point placing him into Criminal History Category I.  A total offense level of 25 at Criminal History Category I results in a Guidelines range of 57 to 71 months' imprisonment.

**IV.  RECOMMENDED SENTENCE**

Given the nature and circumstances of the offense, defendant's personal characteristics, and the need for deterrence, the government submits that a low-end 57-month sentence followed by one year of

5

1    supervised release and a mandatory $200 special assessment is

2    sufficient but not greater than necessary to accomplish the goals of

3    18 U.S.C. § 3553(a).[1]

4         Defendant's crimes deserve stern punishment.  He made defrauding

5    the United States a significant revenue stream for Ambiance,

6    appropriating approximately $35,227,855.45 from CBP and the IRS in

7    less than four years.[2]  Nor was the criminal nature of defendant's

8    conduct in doubt.  He kept two sets of books to trick his accountants

9    and created an "Undervalue Calculator" so Ambiance could quickly and

10   consistently avoid paying customs duties.  These are classic frauds

11   perpetrated on a massive scale.  Moreover, defendant committed these

12   crimes for simple greed.  The PSR identifies no financial motive to

13   break the law.  Instead, defendant wanted to line his pockets -- or,

14   rather, his shoeboxes -- with cash owed to the United States.

15   Defendant's blatant disrespect for the law also damaged the community

16   in other ways; Ambiance helped fund the narcotics trade by accepting

17   over $11 million in likely drug proceeds without filing a single

18   Currency Transaction Report.  Drug traffickers and other illegal

19   actors rely on the anonymity provided by unscrupulous companies and

20   individuals to avoid detection.  Defendant gladly accepted this cash

21   without a second thought of the consequences, even after warnings

22   from his accountants and law enforcement.

23

24        [1] Pursuant to the plea agreement, the government does not
25   recommend a fine in light of the $81,564,856.08 forfeiture amount.
     (Plea Agreement, Exhibit E, at 1.)

26        [2] Pursuant to the plea agreement, defendant agreed to be jointly
27   and severally liable with Ambiance for restitution in the amount of
     $16,806,412.04 to the IRS and $18,421,443.41 to CBP.  (Plea Agreement
     ¶ 22.)  However, as agreed in Exhibit E to the plea agreement, the
28   restitution amount has already been provided to the Court from seized
     funds.

A significant term of imprisonment is necessary to promote respect for the law and deter others.  Defendant and those who would deploy their businesses to engage in similar schemes make the calculated decision that the risk of being caught, and being punished, is worth the illicit proceeds.  A sentence of 57 months alters that calculus, causing defendant and others to decide that the money to be gained is not worth the risk of being imprisoned for a length of time commensurate with the sum stolen.

On the other side of the ledger, the seriousness of defendant's offenses is mitigated to a degree by his age and health.  (PSR ¶¶ 89, 104-108.)  As a 67-year-old, incarceration will affect defendant more than it would a younger man.  Nevertheless, defendant's health and age must be balanced against the need for the sentence to reflect the seriousness of the offenses and to promote respect for the law. Where, as here, defendant's crimes were significant, ongoing, and calculated, mitigation does not require a variance below the applicable range.  Instead, the government's recommended 57-month sentence -- at the low end of the applicable range -- strikes the appropriate balance among the 18 U.S.C. § 3553(a) factors.

**V.    CONCLUSION**

For the foregoing reasons, the government recommends a low-end sentence of 57 months' imprisonment followed by a one-year term of supervised release under the conditions recommended by the USPO and a $200 special assessment.